UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINE L. COPPETA,

                        Plaintiff,

                                                                    <u>DECISION AND ORDER</u>

                                                                           11-CV-6311L

                        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

      In this action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner"), plaintiff Christine Coppeta ("plaintiff") appeals from the Commissioner's denial of disability insurance benefits.

      On July 14, 2008, plaintiff, then 45 years old, filed an application for disability insurance benefits under Title II of the Social Security Act. Plaintiff alleged an inability to work since March 1, 2005, due primarily to migraine headaches, degenerative disc disease, carpal tunnel syndrome. (T. 10). Her application was initially denied. (T. 10). Plaintiff requested a hearing, which was held on January 11, 2010 before Administrative Law Judge ("ALJ") John P. Costello, and at which plaintiff was represented by counsel. (T. 24-44). The ALJ issued a decision on January 27, 2010, concluding that plaintiff was not disabled under the Social Security Act. (T. 10-17). That decision became the final decision of the Commissioner when the Appeals Council denied review on April 29, 2011 (T. 1-3). Plaintiff now appeals, *pro se*.

      The Commissioner has moved (Dkt. #10) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons discussed below, the Commissioner's motion is granted, and the complaint is dismissed.

DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires an ALJ to follow a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 CFR §404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 CFR §404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled. If not, analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f). Then, the ALJ determines whether the claimant's RFC permits her to perform the requirements of her past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" considering her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)). *See* 20 CFR §404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g);

*Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770,  774 (2d Cir. 1998) *quoting  Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997).  Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

In his decision, ALJ Costello described the medical record in detail, including plaintiff's treatment history for migraine headaches, neck pain, carpal tunnel syndrome, asthma and depression, which he determined did not meet or equal a listed impairment.  In analyzing the pertinent evidence of plaintiff's exertional limitations, the ALJ found that plaintiff could perform light, low stress work not requiring more than frequent reaching and handling, not involving concentrated or excessive exposure to respiratory irritants, and permitting an absence of up to one day per month, due to migraine headaches.  Plaintiff makes no objection to the ALJ's determination of her RFC as it relates to her exertional limitations, and I find that his determination is supported by substantial evidence in the record.

With respect to non-exertional limitations, the ALJ found that plaintiff had no restriction in activities of daily living, moderate difficulty with social functioning, mild difficulty with concentration, persistence or pace, and no episodes of decompensation.  These findings are supported by substantial evidence in the record, including numerous mental RFC assessments (T. 440, 450-

452,474-477, 494) are not meaningfully challenged by plaintiff,[1] and, when credited, fall short of the threshold for disability based on mental impairment. See * (Paragraph B) (in order to be disabling, mental impairment must result in marked restriction in at least two of four functional categories).

Plaintiff nonetheless argues that the ALJ's decision was erroneous, because plaintiff was unable to return to her past relevant work with the United States Postal Service ("USPS"). Indeed, the ALJ likewise found that plaintiff was unable to return to her prior work. However, the ALJ proceeded to follow the proper steps in analyzing plaintiff's claim, including determining plaintiff's RFC and obtaining testimony from a vocational expert, who testified that there were ample jobs in the national and local economy that plaintiff could perform. As such, the fact that plaintiff was unable to return to her past work does not direct a finding of disability.

Plaintiff also claims that the ALJ failed to sufficiently account for the frequency and severity of plaintiff's migraine headaches in determining her RFC, and should have determined that plaintiff's headaches would cause her to miss more than one day of work per month. Although plaintiff attempts to rely on subjective complaints and newly-produced, self-recorded records of absenteeism during her prior work with the USPS, plaintiff has not produced, nor does the record contain, any medical evidence supporting her claim that she suffers from disabling migraines on a more frequent basis. None of her treating, examining or consultative physicians concluded that her headaches were disabling, and plaintiff's hearing testimony that she suffered disabling headaches on a daily basis was belied by her descriptions of daily activities, which include raising her young son, socializing with friends, driving, exercising, theater and dancing. (T. 15, 482). A review of plaintiff's medical treatment records reflects that plaintiff rarely complained of headaches, and that her treating physician, Carmen D'Angelo, and treating physician's assistant, Mike DiVito, routinely prescribed plaintiff the same migraine medication, suggesting that the medication was treating

---

[1] Although plaintiff asserts that she did have several periods of decompensation, she appears to misinterpret the definition of the term as encompassing all episodes of stress and/or depression. In any event, no medical evidence of record supports her contention.

plaintiff's headaches effectively. (T. 561-619). The only factor that would appear to frustrate the effectiveness of that treatment is plaintiff's self-reports to treating and examining physicians that she does not take her medications as prescribed. (T. 252, 482).

Plaintiff's final claim, that she has been diagnosed with a dural arteria-venous malformation, is unsupported by the record, and indeed, is contradicted by later objective testing which found, after a June 2007 MRI of plaintiff's brain revealed an area "suspicious" for such a condition (Dkt. #15 at 11), that although there was a "prominent vein" in that area (Dkt. #15 at 12, May 13, 2010 report), it was one of several "normal variants" (Dkt. #15 at 14). Again, plaintiff has produced no medical records wherein any physician has formally diagnosed her with such a condition, or rendered any opinion concerning its impact on plaintiff's ability to perform the physical or mental demands of work within the pertinent time frame.

I have considered the remainder of plaintiff's claims, and find them to be without merit.

## CONCLUSION

For the reasons discussed herein, the Commissioner's motion for judgment on the pleadings (Dkt. #10) is granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
    November 2, 2012.